## 40061. ATLANTA METALLIC CASKET COMPANY v. MOSBY TRUCK SERVICE, INC.

DECIDED APRIL 24, 1963.

*Bullock, Yancey & Mitchell, Harris Bullock,* for plaintiff in error.

*Gambrell, Harlan, Russell, Moye & Richardson, E. Smythe Gambrell, Edward W. Killorin,* contra.

EBERHARDT, Judge. The question in this case is the jurisdiction of the Civil Court of Fulton County over nonresident motorists and the solution depends on statutory interpretation. Prior to 1955, the Nonresident Motorists Act[1] provided that the courts "having jurisdiction of tort and criminal actions" would have jurisdiction under the act. In 1955, the General Assembly amended the act as set out in the footnote.[2]

---

[1] *Code Ann.* § 68-803 (Ga. L. 1937, p. 734; 1947, pp. 305, 306).

[2] "An Act to amend an Act providing for actions against nonresidents operating motor vehicles in this State, approved March 30, 1937 (Ga. L. 1937, p. 732) as amended by an act approved March 27, 1947 (Ga. L. 1947, p. 305) by amending Section 3 thereof, as amended (*Code Ann. Supp.* § 68-803), relating to

Plaintiff (plaintiff in error) filed suit against the nonresident defendant in the Civil Court of Fulton County for property damage as the result of an auto collision. The defendant filed a plea to the jurisdiction and a general demurrer raising the issue

---

jurisdiction and venue, so as to authorize the bringing of joint actions in the county of a resident defendant's residence, and joining therein the non-resident defendant; to repeal conflicting laws; and for other purposes.

"Be it enacted by the General Assembly of Georgia:

"Section 1. An Act providing for actions against non-residents operating motor vehicles in this State, approved March 30, 1937 (Ga. L. 1937, p. 732), as amended by an act approved March 27, 1947 (Ga. L. 1947, p. 305) is hereby amended by adding to Section 3 of said act, as amended, relating to jurisdiction and venue, the following: 'Where action for damages is brought against a resident of this State, any non-resident involved in the same accident or collision and who is suable under the provisions of this Act may be joined as a defendant in the county wherein the resident defendant is suable', so that said section, when so amended, shall read as follows:

" 'Section 3. All suits or causes of action brought under the Acts approved March 30, 1937, and appearing in Georgia Laws of 1937 on pages 732-734, relating to the use of the highways of this State by non-resident motorists shall be brought in the county in which the accident, injury, or cause of action originated, or in the county of the residence of the plaintiff therein, as the plaintiff in such suit may elect, if the plaintiff in such suit is a resident of the State of Georgia; and if the plaintiff in such suit is a non-resident of the State of Georgia, then in that event, such suit shall be brought in the county in this State in which the accident or injury occurred or the cause of action originated; and the courts in said counties having jurisdiction of tort actions shall have jurisdiction of all such non-resident users in actions arising under this Act. Where action for damages is brought against a resident of this State, any non-resident involved in the same accident or collision and who is suable under the provisions of this Act may be joined as a defendant in the county wherein the resident defendant is suable.'

"Section 2. All laws and parts of laws in conflict with this Act are hereby repealed.

"Approved March 9, 1955." (Ga. L. 1955, pp. 650-651).

of the lack of jurisdiction of the Civil Court of Fulton County.[3] Both the plea and the demurrer were sustained and plaintiff appeals.

1. The primary contention made by the defendant is that the amendment of 1955 was not effective to delete the words "and criminal" from the statute as it previously appeared so that nonresident motorists could be sued in courts having jurisdiction of "tort actions" only.[4] This reasoning is based on the fact that the "declaratory clause" does not mention the deletion of the words "and criminal" but rather purports to add other language. However, the statute goes on to provide that the act "when so amended, shall read as follows" setting out the law without the words "and criminal."

We feel that a definitive answer to this problem can be found in a series of cases beginning with *Gilbert v. Georgia R. &c. Co.,* 104 Ga. 412 (1) (30 SE 673). In *Gilbert,* the Supreme Court was confronted with a situation where the declaratory clause set out certain amendments but the amendments did not appear in the language after the clause "so that said section, when amended, shall read as follows." Justice Cobb, speaking for the court, said: "While in amending statutes it is proper to embrace in the first part of the amending act, as declaratory of the intention of the General Assembly, what is to be the character of the amendment, still this part of the statute, which is merely declaratory of the legislative intention, is not to be looked to as the final determination of the General Assembly.

---

[3]In *Pate v. Taylor Chemical Co.,* 88 Ga. App. 127 (76 SE2d 131) it was held that a similar court did not have such jurisdiction of "criminal actions" so as to give it jurisdiction within *Code Ann.* § 68-803 as it appeared prior to 1955.

[4]No constitutional attack has been made by either party on such matters as the sufficiency of the caption to encompass the amendment, particularly the deletion of the words "and criminal," and such an attack, if made, could not properly be passed on by this court. Ga. Const. Art. VI, Sec. II, Par. IV (*Code Ann.* § 2-3704); See *Hole v. Duncan,* 105 Ga. App. 725, 727 (3) (125 SE2d 731).

When a statute or section of the Code to be amended is recited in the statute in its amended shape, and it is in express terms declared therein that when amended the old law shall read in a certain way, this declaration by the General Assembly, being the last expression of its intention as to what shall be the law of the State, absolutely controls where any conflict arises as to matter contained in this declaration of what the law shall be and what is set forth in the first part of the amending statute as declaratory of the legislative intention. If the declaratory part, which recites that certain amendments are to be made, is entirely omitted from the recital as to how the statute shall read when amended, it is to presumed that it was the intention of the General Assembly to omit from the new law that part of the amending statute which was not carried into the new law as recited in the statute, and that the failure to strike from the declaratory part of the law so much of it as was not to be embraced in the new law was by mistake or inadvertence. This being true, the proviso which is set forth in the first part of the act above quoted is no part of the law and was properly disregarded by the codifiers. In the case of Goodno v. City of Oshkosh, 31 Wis. 127, it was held that 'where a statute provides that a specified section of a former statute "shall be amended so as to read as follows," etc., reciting the section in full as amended, any provision of such section not found in the new statute is repealed.' To the same effect also is the case of Moore v. Mausart, 49 N.Y. 332. See also State v. Andrews, 20 Tex. 230; Sutherland on Stat. Cons. § 137. These authorities clearly show that where an amending act recites that the old act as amended shall read in a certain way, such recital as to what the law shall be after the passage of the amended act abrogates everything in the old law which is not contained therein. While not directly in point, we think the principle of these decisions is applicable to the present case. If the recital of how the law shall stand after the amendment abrogates an existing law, much more would it be held that a new declaration of the legislative intention, contained in a clause in the first part of the act which is entirely omitted from the recital as to how the new law shall read, should never become operative."

*Gilbert* was followed as to the same statute in *Gilbert v. Georgia R. &c. Co.*, 105 Ga. 486 (30 SE 888) and *Savannah, Fla. &c. R. Co. v. Tony*, 108 Ga. 753 (32 SE 878).

Additional cases in accord with *Gilbert* are: *Ryle v. Wilkinson County*, 104 Ga. 473 (30 SE 934), where a proviso that did not appear in the declaratory clause was added to the law and held to be a part of the law, the court, per Presiding Justice Lumpkin, stating at p. 476: "The work of the amendment was not artistically done, but the result sought to be reached is clear and obvious. The General Assembly designed that the code section, after being amended, should read in a particular way, and there is no uncertainty as to what its reading should then be"; *Crine v. Morton Salt Co.*, 178 Ga. 754 (174 SE 347), where a certified question presenting essentially the same facts as *Gilbert* was answered in accordance therewith; *Hart v. Head*, 186 Ga. 823 (199 SE 125), where the caption of the act set forth a certain amendment that was not included in the body of the act; *Tyler v. Huiet*, 199 Ga. 845 (36 SE2d 358); and, *Haire v. State*, 43 Ga. App. 105 (157 SE 909), where the court answered its question "Were there ever so many contradictions in one short Act?" by holding that the last of three directly contradictory sections of the same act should prevail.

The apparent contrary authority of *Abernathy v. Mitchell*, 113 Ga. 127 (1) (38 SE 303) seems to have overlooked *Gilbert* and others mentioned above which are older, full bench decisions and binding on us.

Thus it can be seen that we follow an unbroken line of authority dating from *Gilbert* in 1898 and one that is in accord with the American majority. 1 Sutherland, Statutory Construction § 1932 (3d Ed. 1943, 1962 Supp.); 50 Am. Jur. 263, Statutes, § 276. The rule represents a common sense approach that is both just and laudable.

2. Two additional factors fortify us in our decision, namely: (a) The legislative Journals for the 1955 General Assembly show beyond any peradventure the legislative intent with regard to the words "and criminal." The statute under consideration was specifically amended in the House[5] to delete the words "and

---

[5]"Mr. Chambers of Richmond moves to amend SB 9, by

criminal" and the amendment was agreed to in the Senate.[6]  The Journals were not introduced in evidence below, but *Code* § 38-102 allows this court to take judicial notice of them.  While it is not entirely clear in this State when it is permissible to look to the Journals for legislative intent, there are many instances where this has been done without discussion.  E.g., *State Hwy. Dept. v. Hatcher*, 218 Ga. 299, 302 (127 SE2d 803).  "Resort to aid of this kind is seemingly in conflict with the enrolled bill rule which provides that the courts cannot look behind the bill as enrolled and filed with the Secretary of State.  Actually it is not, since the enrolled bill rule refers only to the formal procedure of passage.  Resort to the journals for the purpose of interpretation is far different; resort to the legislative journals in this case is to discover the meaning of the act."  2 Sutherland, Statutory Construction 507, § 5015 (3d Ed. 1943).

(b)  Another indication of legislative intent can be found in the 1959 amendment to the statute.  Ga. L. 1959, p. 120.  There the legislature, after the declaratory clause, set out the way the law was to read and this version also omits the words "and criminal."  Again, the *Gilbert* rule, 104 Ga. 412 (1), supra, on the last pronouncement of the legislature demands that we hold the words deleted.

The trial court erroneously sustained the general demurrer.

*Judgment reversed.  Felton, C. J., and Russell, J., concur.*

---

striking from Section 3 line 10 (ten), the words 'and criminal.' "

"On the passage of the bill, as amended, the ayes were 115, nays 0."  1955 Ga. House Journal, Reg. Sess., p. 849.

[6]On motion to concur in the amendment by the bill's author, Senator Hollis of the 24th, "the ayes were 37, nays 0."  1955 Ga. Senate Journal, Reg. Sess., p. 622.