A03A1912. MITCHELL REALTY GROUP, LLC v. HOLT.
(596 SE2d 625)

RUFFIN, Presiding Judge.

Mitchell Realty Group, LLC ("Mitchell") sued William Holt for a brokerage commission allegedly owed under a real estate purchase and sale agreement. The parties filed cross-motions for summary judgment. Following a hearing, the trial court granted Holt's motion and denied Mitchell's motion. Mitchell appeals, and for reasons that follow, we affirm.

Summary judgment is appropriate when the evidence, construed most favorably to the non-moving party, demonstrates that no genuine issues of material fact remain and that the movant is entitled to judgment as a matter of law.[1] Viewed in this manner, the evidence shows that James Garrett listed a ten-acre tract of commercial property ("the property") for sale with Mitchell, a real estate broker. Holt, who owns several car dealerships, saw the "for sale" sign on the property, thought it might be a good place for a new dealership, and called Mitchell.

On March 18, 2002, Holt signed a purchase and sale contract, through which he agreed to buy the property. The contract specified

---

[1] See *Burns v. Dees*, 252 Ga. App. 598, 599 (557 SE2d 32) (2001).

that Mitchell was acting as a dual agent, representing both the seller and buyer in the transaction. Paragraph 11 (B) of the contract further stated:

> The Broker(s) identified herein have performed valuable brokerage service and are to be paid a commission pursuant to a separate agreement or agreements. Unless otherwise provided for herein, the Listing Broker will be paid a commission by the Seller, and the Selling Broker will receive a portion of the Listing Broker's commission pursuant to a cooperative brokerage agreement. . . . In the event the sale is not closed because of Buyer's and/or Seller's failure or refusal to perform any of their obligations herein, the non-performing party shall immediately pay the Broker(s) the full commission the Broker(s) would have received had the sale closed, and the Selling Broker and Listing Broker may jointly or independently pursue the non-performing party for their portion of the commission.

Holt subsequently determined that the property would not be a good site for a dealership and refused to close the sale. Citing Paragraph 11 (B) of the purchase contract, Mitchell sued Holt for the ten percent brokerage commission it allegedly would have received had the sale closed. Holt moved for summary judgment, arguing that Mitchell presented no evidence of a valid contract establishing the commission. The trial court granted summary judgment to Holt and denied Mitchell's cross-motion for summary judgment. We find no error.

The parties agree that this case is governed by Georgia's Brokerage Relationships in Real Estate Transactions Act ("BRRETA" or "the Act").[2] The legislature enacted BRRETA to regulate "the relationship between sellers, . . . buyers, . . . and real estate brokers . . . to the extent not governed by specific written agreements between and among the parties."[3] As part of this regulation, the Act imposes on brokers a duty to perform the terms of the brokerage engagement made with a seller or buyer.[4] A "brokerage engagement" is "a *written* contract wherein the seller [or] buyer . . . becomes the client of the broker and promises to pay the broker a valuable consideration or agrees that the broker may receive a valuable consideration from

---

[2] See OCGA § 10-6A-1 et seq.
[3] OCGA § 10-6A-2 (a).
[4] See OCGA §§ 10-6A-5 (a) (1); 10-6A-7 (a) (1).

another" for brokerage services.[5] The written brokerage engagement must, among other things, advise the prospective client "as to the broker's compensation."[6]

The legislature clearly intended that agreements between a broker and its clients regarding the amount of brokerage compensation be placed in writing.[7] In this case, however, there is no evidence of such a written agreement between any parties. The purchase agreement states that Mitchell will be paid a commission, but does not specify the amount, referring instead to "a separate agreement or agreements." And the record contains no other written contract establishing the amount of Mitchell's compensation.

On appeal, Mitchell asserts that two documents allegedly given to Holt before he signed the sales contract constitute written agreements relating to the ten percent commission. We disagree.

The first document, entitled "Highway 515 Properties[,] Ellijay, Georgia," lists four properties, their price per acre, and their total sales price. According to Mitchell, the ten-acre parcel listed on the document corresponds to the property at issue in this case. Mitchell further contends that the document is a written agreement reflecting a ten percent brokerage commission for sale of the parcel.

"To constitute a valid contract, there must be parties able to contract, a consideration moving to the contract, the assent of the parties to the terms of the contract, and a subject matter upon which the contract can operate."[8] The first document cited by Mitchell does not meet these requirements. Perhaps most fundamentally, the document does not identify the parties to the alleged contract or indicate assent to any contractual terms. It simply contains information regarding the sales price of several real estate parcels. Furthermore, even if the document could be viewed as a contract, it does not establish the commission for the ten-acre parcel. On the contrary, it states: "10 Acre Site is an Exclusive Right to Sell Listing — Others are Unlisted, but Seller is offering a 10% Commission on any Contract with 5% to Selling Broker." The ten percent figure, therefore, is an

---

[5] (Emphasis supplied.) OCGA § 10-6A-3 (4).

[6] OCGA § 10-6A-10 (3).

[7] Prior to a 2000 amendment, BRRETA defined "brokerage engagement" as either an express written *or* oral contract, and we held oral contracts for brokerage services and commissions enforceable. See Ga. L. 1993, p. 378; *Lifestyle Family v. Lawyers Title Ins. Corp.*, 256 Ga. App. 305, 308, n. 2 (568 SE2d 171) (2002); *Steinemann v. Vaughn & Co.*, 169 Ga. App. 573, 576 (1) (313 SE2d 701) (1983). Because the legislature deleted the language permitting oral contracts for brokerage services, we may presume that it intended to change the law to require that such agreements be written. See *Atlanta Metallic Casket Co. v. Mosby Truck Svc.*, 107 Ga. App. 677, 682 (2) (b) (131 SE2d 590) (1963). Moreover, Mitchell does not contend that it is entitled to recover under an oral agreement.

[8] OCGA § 13-3-1.

*offer* relating to the unlisted properties, not the ten-acre parcel. Under these circumstances, we cannot characterize this document as a written agreement for a ten percent commission on the subject property.[9]

Mitchell's argument relating to the second document is similarly flawed. That document, referred to as the "listing sheet" by Mitchell, provides information regarding the property, such as its size, location, list price, zoning status, owner, listing agent, and the owner's willingness to negotiate possession at closing. In essence, this document sets the parameters for the sales offer. It is not a contract.[10] Moreover, the document does not reflect a ten percent commission. Under the heading "Sale Com," it simply contains the number "5."

The record contains no evidence of a valid written agreement regarding the amount of commission Mitchell would have received had the sale closed. As a result, Mitchell cannot establish that it was entitled to recover a contract-based commission under Paragraph 11 (b) of the purchase agreement.[11] Accordingly, the trial court properly entered summary judgment for Holt and denied Mitchell's motion for summary judgment.

*Judgment affirmed. Smith, C. J., and Miller, J., concur.*

DECIDED JANUARY 27, 2004 —
RECONSIDERATION DENIED MARCH 12, 2004.

*John T. Longino*, for appellant.
*Lawrence S. Sorgen*, for appellee.

---

[9] See id.; *Burns*, supra at 601-602 (1) (a) (" 'It is well-established that a contract does not exist unless the parties agree on all material terms. [Cit.] A contract cannot be enforced if its terms are incomplete, vague, indefinite, or uncertain.' ").

[10] See *Morrison v. Trust Co. Bank*, 229 Ga. App. 145, 147 (1) (493 SE2d 566) (1997) (contract is not formed until offer is accepted unconditionally, unequivocally, and without variation); *Carterosa, Ltd. v. General Star Indem. Co.*, 227 Ga. App. 246, 248 (1) (489 SE2d 83) (1997) ("A mere offer to renew [an insurance policy] does not create a contract unless accepted by the insured.").

[11] Mitchell does not claim, and we need not address whether, it is entitled to recover under any theory other than contract, such as quantum meruit. See *Lifestyle*, supra at 310 (2) ("BRRETA does not preclude recovery under a quantum meruit theory or the procuring cause doctrine.").