A11A0812. JONES et al. v. BILL GARLEN REAL ESTATE et al.
(715 SE2d 777)

ELLINGTON, Chief Judge.

In December 2008, LaMont Harmon entered into a contract to purchase a home in Jesup from Rick Hayes, who had listed the property with Bill Garlen Real Estate. After the sale failed to close, Harmon and his fiancée, Sandra Jones (collectively, "the appellants"), pro se, brought this action against Bill Garlen Real Estate,

---

Bill Garlen individually, and Garlen's agent, Ann Grantham (collectively, "the appellees") and against Hayes, in the Superior Court of Wayne County. The appellees moved to dismiss the complaint. After a hearing, the trial court determined that the complaint failed to state a claim against the appellees upon which relief could be granted and, therefore, granted their motions to dismiss. "We review de novo the trial court's grant of a motion to dismiss. A motion to dismiss may be granted only where a plaintiff would not be entitled to relief under any set of facts that could be proven in support of the plaintiff's claim." (Citations and punctuation omitted.) *Johnson v. Bd. of Commrs., Bibb County*, 302 Ga. App. 266, 267 (690 SE2d 912) (2010). For the reasons explained below, we affirm.

In their complaint, the appellants alleged the following. On December 27, 2008, Harmon and Hayes executed a Purchase and Sale Agreement, which was contingent on the property being appraised for at least the purchase price of $195,000. The appraised value did not satisfy that contingency. The appellants then terminated their agreement with the appellees under which the appellees acted in a dual capacity as their (buyer's) agent as well as Hayes' (seller's) agent.

On January 29, 2009, Harmon, through the appellants' new agent, Angel Spry, and Hayes entered into a new Purchase and Sale Agreement. The second Agreement was contingent on closing on or before February 6, 2009. The sale failed to close by that date.

On February 9, 2009, the appellees prepared a third Purchase and Sale Agreement, showing a purchase price of $185,000 and requiring closing by February 17, 2009. Neither the appellants nor Hayes executed the third Agreement, however, and the appellees negotiated the sale of the property to another buyer.

On February 12, 2009, the appellants successfully offered to buy a different, less attractive property at less favorable terms and allegedly suffered other damages.

The appellants alleged that the appellees breached the second Agreement, which the appellants attached and incorporated into their complaint, by refusing to provide required documentation to the loan processor and by refusing to extend the closing date after the sale failed to close by February 6, 2009.[1] The appellants' complaint, taken as true for purposes of the appellees' motions, however, establishes that Grantham executed the second Agreement solely as the seller's agent, while Harmon was represented by Spry as the buyer's agent. As the trial court concluded, the express terms of

---

[1] We note that the first Agreement was not contingent on closing by any specified closing date.

374

the second Agreement fail to show that the appellees undertook any contractual duties in favor of the appellants.

On appeal, the appellants argue that the appellees' actions breached their duties under the Brokerage Relationships in Real Estate Transactions Act, OCGA § 10-6A-1 et seq. The General Assembly enacted the Act "to govern the relationships between sellers, landlords, buyers, tenants, and real estate brokers and their affiliated licensees" where such relationships "are not governed by specific written agreements between and among the parties." OCGA § 10-6A-2 (a). "In place of general fiduciary duties, [the Act] enumerates specific duties which real estate brokers must exercise with reasonable care. These duties vary, depending upon whether a 'customer' or a 'client' relationship exists." (Footnotes omitted.) *Killearn Partners v. Southeast Properties*, 279 Ga. 144, 146 (1) (611 SE2d 26) (2005).[2] Further, a broker who performs brokerage services for a client or customer

> shall owe the client or customer only the duties and obligations set forth in [the Act], unless the parties expressly agree otherwise in a writing signed by the parties. A broker shall not be deemed to have a fiduciary relationship with any party or fiduciary obligations to any party but shall only be responsible for exercising reasonable care in the discharge of its specified duties as provided in this chapter and, in the case of a client, as specified in the brokerage engagement.

OCGA § 10-6A-4 (a).

The Act defines a "[c]lient" as "a person who is being represented by a real estate broker in an agency capacity pursuant to a brokerage engagement[,]" which must be in writing.[3] OCGA § 10-6A-3 (6). A "[c]ustomer," on the other hand, is "a person who is not being represented by a real estate broker in an agency capacity pursuant to a brokerage engagement but for whom a broker may perform ministerial acts in a real estate transaction pursuant to either a verbal or written agreement." OCGA § 10-6A-3 (8). "Relationships between a broker and a customer normally do not involve the exercise of professional judgment or skill, and may be established either orally or in writing." (Footnote omitted.) *Killearn Partners v.*

---

[2] See also OCGA § 10-6A-3 (5) (defining a "[b]rokerage relationship" as "the agency and nonagency relationships which may be formed between the broker and the broker's clients and customers, as described in [the Act]").

[3] OCGA § 10-6A-3 (4) (defining "[b]rokerage engagement").

*Southeast Properties*, 279 Ga. at 146 (1).

The appellants' complaint establishes that any broker-client relationship between the appellees and Harmon that may have been created when Grantham executed the first Purchase and Sale Agreement as both the buyer's agent and the seller's agent,[4] ended when that Agreement failed due to the low appraisal. Thereafter, Harmon engaged Spry as buyer's agent, and the relationship between the appellees and Harmon was that of broker-customer. In the absence of a written agreement between them, the appellees' duties were those set out in OCGA § 10-6A-5 (duties owed by a broker engaged by a seller). Although a broker who is engaged only by a seller owes a buyer (who is a "customer" rather than a "client") certain duties in terms of disclosure of information,[5] the appellants'

---

[4] See OCGA §§ 10-6A-3 (10) (defining a "[d]ual agent" as "a broker who simultaneously has a client relationship with both seller and buyer or both landlord and tenant in the same real estate transaction"); 10-6A-12 (dual agency).

[5] OCGA § 10-6A-5 (b) provides:

A broker engaged by a seller shall timely disclose the following to all parties with whom the broker is working:

(1) All adverse material facts pertaining to the physical condition of the property and improvements located on such property including but not limited to material defects in the property, environmental contamination, and facts required by statute or regulation to be disclosed which are actually known by the broker which could not be discovered by a reasonably diligent inspection of the property by the buyer; and

(2) All material facts pertaining to existing adverse physical conditions in the immediate neighborhood within one mile of the property which are actually known to the broker and which could not be discovered by the buyer upon a diligent inspection of the neighborhood or through the review of reasonably available governmental regulations, documents, records, maps, and statistics. Examples of reasonably available governmental regulations, documents, records, maps, and statistics shall include without limitation: land use maps and plans; zoning ordinances; recorded plats and surveys; transportation maps and plans; maps of flood plains; tax maps; school district boundary maps; and maps showing the boundary lines of governmental jurisdictions. Nothing in this subsection shall be deemed to create any duty on the part of a broker to discover or seek to discover either adverse material facts pertaining to the physical condition of the property or existing adverse conditions in the immediate neighborhood. Brokers shall not knowingly give prospective buyers false information; provided, however, that a broker shall not be liable to a buyer for providing false information to the buyer if the broker did not have actual knowledge that the information was false and discloses to the buyer the source of the information. Nothing in this subsection shall limit any obligation of a seller under any applicable law to disclose to prospective buyers all adverse material facts actually known by the seller pertaining to the physical condition of the property nor shall it limit the obligation of prospective buyers to inspect and to familiarize themselves with potentially adverse conditions related to the physical condition of the property, any improvements located on the property, and the neighborhood in which the property is located. No cause of action shall arise on behalf of any person against a broker for revealing information in compliance with this

complaint does not aver that the appellees breached any of those duties. Accordingly, the trial court did not err in granting the appellees' motions to dismiss. *Jenkins v. Ga. Dept. of Corrections*, 279 Ga. App. 160, 161 (630 SE2d 654) (2006); *Zager v. Brown*, 242 Ga. App. 427, 430 (1) (530 SE2d 50) (2000).

*Judgment affirmed. Miller, P. J., and Doyle, J., concur.*

DECIDED AUGUST 9, 2011.

Sandra Jones, *pro se.*
LaMont Harmon, *pro se.*
*David M. Conner*, for appellees.

---

subsection. No broker shall be liable for failure to disclose any matter other than those matters enumerated in this subsection. Violations of this subsection shall not create liability on the part of the broker absent a finding of fraud on the part of the broker.

Cf. OCGA § 10-6A-7 (duties owed by a broker engaged by a buyer).