## A04A0539. GIBSON et al. v. REZVANPOUR et al.
### (601 SE2d 848)

ADAMS, Judge.

Sue and Davis Gibson, plaintiffs below, appeal a trial court decision granting summary judgment to several defendants in this tort suit arising out of a dog bite.

A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant. *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

James and Susie Foulks owned a house in Canton, as well as two dogs, and they decided to sell their house.[1] They listed their house with Rebecca A. Martin, a licensed real estate salesperson, who had been affiliated with Cherokee Connections, Inc. d/b/a Re/Max Town & Country ("CCI") for approximately nine years. Martin met with the Foulkses at their home several times and had the opportunity to observe the dogs. She never observed any vicious or dangerous acts and, in fact, found the dogs to be friendly. The Foulkses never told Martin that the dogs had dangerous propensities, and they deny that they had ever seen any such behavior in the dog that bit Sue Gibson. The Foulkses stated that had Martin asked them if the dogs were dangerous, they would have told her, "no." The Foulkses told Martin that the dogs would be in the backyard which was fenced. When Martin listed the house with the First Multiple Listing Service ("FMLS"), she indicated that the Foulkses had pets, that there was a lockbox for the key, and that one should call the owner to show the home. The box for "appt. only" was left blank.

In August 1999, Sue and Davis Gibson were in the market for a new home and they contacted Mercedeh Rezvanpour, a licensed real estate salesperson, for assistance. Sue Gibson testified in an affidavit that Rezvanpour was functioning as the seller's sub-agent, not as a buyer's agent. Rezvanpour located the Foulkses' residence on the FMLS database and printed a "short form" listing of information about the property. The short form did not include the indication that there were pets on the property. According to Gibson, Rezvanpour admitted that she had not looked at the long form of the listing and

---

[1] We remind the bar that the Rules of the Court of Appeals require that record and transcript citations must be to the volume or part of the record or transcript and the page numbers that appear on the appellate records or transcript as sent from the court below. See Rule 27. This means that parties should not cite to the page number of a document, such as a deposition or affidavit, included in the record but rather to the record page number.

therefore had not seen that the Foulkses had pets. Rezvanpour had no other reason to know that there were dogs on the property.

Rezvanpour called Martin to confirm that the property was still available. She then left a message with the Foulkses indicating that she was planning on showing the property. On August 12, 1999, Rezvanpour drove Sue Gibson to the home and opened the lockbox to get the key. The two first went upstairs, and while there, according to Gibson, they both heard dogs barking and observed a glimpse of a dog that appeared to be in a fenced off area in either the backyard of the Foulkses' home or of the neighboring yard. Gibson and Rezvanpour then proceeded to the basement. While in the basement, Gibson opened a door leading to the backyard, and when she did, one of the dogs bit her on the leg, causing injuries.

Gibson and her husband filed suit in the State Court of Cobb County against the Foulkses, Martin, CCI, Elizabeth Hooper (a real estate broker and a 50 percent owner of CCI), Rezvanpour, and certain other parties. By agreement, these other parties were dismissed from the action. In response to separate motions for summary judgment, the court dismissed the claims against Martin, CCI, and Hooper and dismissed the claims against Rezvanpour. The court denied the Foulkses' motion for summary judgment. In 28 enumerations of error, the Gibsons contend that the trial court erred by granting summary judgment to the real estate agents and brokers.

The Gibsons essentially raise three claims against the real estate defendants: breach of statutory duties of a real estate professional, premises liability, and general negligence. The Gibsons do not argue that they have a claim against these parties under OCGA § 51-2-7.[2]

1. The Gibsons attempt to base liability on statutory duties imposed on real estate agents and brokers. They cite to OCGA §§ 43-40-15 (a); 43-40-25 (b) (25); 10-6A-5; 10-6A-14. But our review of these and related Code sections fails to reveal any duties regarding pets other than the general duty to exercise reasonable skill and care in performing all duties, i.e., general negligence, and the Gibsons do not cite any other authority for their claim. We therefore find no basis to this argument.

2. The Gibsons next contend that all of the real estate agents and brokers are liable for failure to keep the premises safe in accordance with OCGA § 51-3-1. The Gibsons contend that because Martin and Rezvanpour had access to the house through use of the lockbox, and

---

[2] "A person who owns or keeps a vicious or dangerous animal of any kind and who, by careless management or by allowing the animal to go at liberty, causes injury to another person who does not provoke the injury by his own act may be liable in damages to the person so injured." OCGA § 51-2-7.

could bring others to the house, Martin and Rezvanpour, and their brokers, were "occupiers" of the Foulkses' home as that term is used in OCGA § 51-3-1.[3]

We need not resolve that issue because even if the real estate agents and brokers could be considered occupiers under OCGA § 51-3-1, "[t]he true ground of liability is the landowner's [or occupier's] superior knowledge of the perilous condition and the danger therefrom to persons coming upon the property. It is when the perilous condition is known to the owner[/occupier] and not known to the person injured that a recovery is permitted." (Citation and footnote omitted.) *Moore v. ECI Mgmt.*, 246 Ga. App. 601, 602-603 (542 SE2d 115) (2000).

In this case, there is no evidence that any of the real estate agents and brokers had any knowledge that the dogs were dangerous. Martin had observed the dogs and found them to be friendly, and the Foulkses never told them otherwise. In fact, had they been asked, the Foulkses would have said that their dogs were not dangerous or vicious. Rezvanpour, at most, was on constructive notice that there were pets in the house, not dangerous animals. Finally, Sue Gibson admits that prior to opening the basement door, she heard barking and thought that dogs could be in the backyard. Mrs. Gibson therefore had as much knowledge about the possibility of danger as any of the real estate agents and brokers. Accordingly, even if the real estate agents and brokers could be considered "occupiers" of the home for the purposes of OCGA § 51-3-1, which we do not decide, the Gibsons could have no claim against any of the real estate agents and brokers based on that Code section. See, e.g., *Webb v. Danforth*, 234 Ga. App. 211, 212 (505 SE2d 860) (1998) (even if landlord retained possession and control of rental unit under OCGA § 51-3-1, plaintiff was still required to produce evidence of vicious propensity of dog to show the dangerous condition of which premises owner had superior knowledge).

3. Finally, the Gibsons argue that Rezvanpour and Martin breached their general duty of care by failing to ask the Foulkses whether their dogs were vicious or dangerous (there is no evidence that either one asked). But, as we noted above, had they been asked, the Foulkses would have said that their dogs were not vicious or dangerous. Furthermore, under Georgia law, there is a presumption that dogs are harmless. *Johnston v. Warendh*, 252 Ga. App. 674, 678 (2) (556

---

[3] OCGA § 51-3-1 provides: "Where an owner or occupier of land, by express or implied invitation, induces or leads others to come upon his premises for any lawful purpose, he is liable in damages to such persons for injuries caused by his failure to exercise ordinary care in keeping the premises and approaches safe."

SE2d 867) (2001). We find no authority in Georgia law suggesting that real estate professionals should not be allowed to rely on that presumption.

4. With regard to Hooper (Martin's broker) and CCI (Martin's agency), the Gibsons raise other claims. They contend that CCI had "contractual obligations and legal duties to ensure the safety of prospective purchasers." They contend that Hooper and CCI had a duty to ensure that sufficient information about potential hazards was included in the multiple listing of the property and that they should have reviewed the listing before it was released. They also contend that Hooper and CCI had a duty to train and instruct Martin about protecting the safety of prospective purchasers. Hooper admitted that she did not give any training to agents regarding listing properties with dogs on the premises or on what information to include in the FMLS.

But again, in this case there is no evidence that any amount of training or oversight would have led to a different result because there is no evidence that the real estate agents and brokers knew or should have known that the dogs were vicious or dangerous. Because the Gibsons cannot prove causation for this claim, it fails.

5. Finally, the Gibsons contend that Hooper and CCI are vicariously liable for Martin's negligence. Because we find that Martin is not liable, this claim fails.

*Judgment affirmed. Ruffin, P. J., and Eldridge, J., concur.*

DECIDED JULY 7, 2004 — 

*Lawrence L. Bennett, Jr.,* for appellants.

*Swift, Currie, McGhee & Hiers, Stephen L. Cotter, Terry O. Brantley, Callaway, Braun, Riddle & Hughes, Stanley E. Harris, Jr., Stevens & McClung, James B. McClung, Fain, Major, Wiley & Brennan, Charles A. Wiley, Jr., Temple, Strickland, Dinges & Schwartz, William A. Dinges, Sheri L. Smith,* for appellees.