S04G1320. KILLEARN PARTNERS, INC. et al. v. SOUTHEAST PROPERTIES, INC.

(611 SE2d 26)

SEARS, Presiding Justice.

Certiorari was granted to consider the Court of Appeals' ruling that the Brokerage Relationships in Real Estate Transactions Act ("BRRETA" or "the Act"),[1] as amended in 2000, does not prevent a real estate professional from seeking a common law remedy such as procuring cause or quantum meruit when no written brokerage engagement agreement has been executed.[2] Having considered this issue, we conclude that nothing in BRRETA indicates that the

---

[1] OCGA § 10-6A-1 et seq.

[2] *Killearn Partners, Inc. v. Southeast Properties*, 266 Ga. App. 508 (597 SE2d 578) (2004).

General Assembly intended to foreclose the availability of remedies outside the Act's scope, including those available under statute and at common law. Accordingly, we affirm.

Southeast Properties, Inc. ("Southeast") filed suit against Killearn Partners, Inc. ("Killearn") seeking to recover compensation for real estate services. Southeast alleged that it had acted as Killearn's agent and representative in connection with Killearn's acquisition of property in Fulton County. In that capacity, Southeast claimed it had undertaken significant professional services on Killearn's behalf, including performing an assessment of the feasibility of Killearn's acquisition of the property. Southeast asserted it had an understanding with Killearn under which Southeast would provide these professional services in exchange for Killearn's payment to Southeast of an amount not less than seven percent of the transaction's value.

Killearn answered and sought summary judgment, arguing that because no written contract existed between itself and Southeast, BRRETA (as amended in 2000) precluded Southeast from recovering compensation under any theory whatsoever. The trial court found: (1) that Southeast had acted as Killearn's real estate agent by providing services that were more than mere ministerial acts, and (2) that there was no written brokerage engagement agreement between the parties. Nonetheless, the trial court denied summary judgment, holding that under BRRETA, no written brokerage engagement agreement is required before an agency relationship exists between a real estate professional and a client, and that the absence of a written agreement did not preclude Southeast from seeking to recover. Killearn appealed, arguing that before a real estate agent may be compensated for his or her services, BRRETA requires a written contract establishing the agent's right to payment. The Court of Appeals affirmed.

1. At issue is the meaning of BRRETA, a statute defining "the legal relationships between a real estate broker and the other parties to a real estate transaction, and establish[ing] the duties and responsibilities . . . of brokers in those relationships."[3] Before BRRETA was enacted, Georgia courts tended to define agents in real estate transactions as fiduciaries,[4] even though such agents had no actual power to bind their principals, as is the general rule with fiduciaries.[5] BRRETA was intended to codify the way relationships within the real estate industry actually work and to distinguish the "limited agency"

---

[3] Note, Peach Sheets, Commerce and Trade, 10 Ga. St. U. L. Rev. 23 (1993). See OCGA § 10-6A-2 (a).

[4] See, e.g., *Dolvin Realty Co. v. Holley*, 203 Ga. 618, 622 (48 SE2d 109) (1948).

[5] Note, 10 Ga. St. U. L. Rev. at 23.

that exists in real estate transactions from common law agency.[6] In place of general fiduciary duties, BRRETA enumerates specific duties which real estate brokers must exercise with reasonable care.[7] These duties vary, depending upon whether a "customer" or a "client" relationship exists.[8] In the context of customer relationships, a broker may perform only ministerial acts, such as identifying properties for sale or providing boilerplate sales contracts.[9] Relationships between a broker and a customer normally do not involve the exercise of professional judgment or skill, and may be established either orally or in writing.[10]

In contrast, client relationships require brokers to exercise professional judgment or skill and involve the provision of professional services such as calculating or negotiating a purchase price. As originally enacted, BRRETA allowed broker-client relationships to be created either orally or in writing.[11] The 2000 revisions to BRRETA, however, require that broker-client relationships be created by written brokerage agreements.[12] At issue in this particular case is what happens when a real estate professional, operating without a written brokerage agreement, provides services to a client that involve professional judgment and skill. Killearn argues that in such situations, the real estate professional is without any remedy and thus is completely deprived of the right to seek compensation for the services rendered. As explained below, we disagree.

2. As discussed in Division 1 (and established by appellate precedent), BRRETA is a statute in derogation of the common law.[13] As such, the scope of BRRETA must be limited in strict accordance with the statutory language used therein, and such language "can never be extended beyond its plain and ordinary meaning."[14] Accordingly, the express language of BRRETA must " 'be followed literally and no exceptions to the requirements of the Act will be read into the statute by the courts.' "[15]

Nowhere in BRRETA is there any mention of when or under what circumstances a real estate agent may assert a claim for payment

---

[6] Id.

[7] OCGA §§ 10-6A-4–10-6A-8.

[8] OCGA § 10-6A-3.

[9] OCGA §§ 10-6A-3 (12); 10-6A-14.

[10] OCGA § 10-6A-3 (8).

[11] Ga. L. 1993, p. 378.

[12] OCGA § 10-6A-3 (4), (6).

[13] See pp. 145-146, supra; *Lifestyle Family, L.P. v. Lawyers Nat. Title Ins. Corp.*, 256 Ga. App. 305, 310 (568 SE2d 171) (2002) (BRRETA, in its pre-amendment form, is in derogation of common law and "[does] not eradicate the common law concept of procuring cause").

[14] *Tolbert v. Maner*, 271 Ga. 207, 208 (518 SE2d 423) (1999).

[15] Id.

owed in exchange for services rendered. Nor does BRRETA indicate that a written agreement must exist before an agent may claim such payment. We believe this silence demonstrates that the legislature did not intend for BRRETA to regulate real estate commissions or remuneration payments, but rather (as explained) is concerned primarily with the question of whether and under what circumstances a client or a customer relationship arises, and what duties are owed within the context of each.[16]

Furthermore, it is established that unless a contrary meaning is plainly evident from the words employed, the language of an amended Code section such as BRRETA will be construed in a way that upholds the existing law, rather than changes it.[17] As first enacted in 1993, BRRETA defined an agreement between a broker and client as an "express written or oral contract."[18] Before BRRETA was amended on July 1, 2000, the Court of Appeals expressly held that the Act did not foreclose a real estate agent from recovering payment under common law theories such as quantum meruit or procuring cause.[19] Thus, between 1993 and 2000, BRRETA did not foreclose actions at common law. On July 1, 2000, BRRETA was amended to require that broker-client relationships be set forth in writing. In redefining a brokerage engagement as a written contract, however, the legislature did not address the availability of remedies at common law, which (as noted) clearly were authorized at that time. Accordingly, we are bound to construe BRRETA so as to maintain the viability of common law theories of recovery such as quantum meruit or procuring cause, thereby upholding the law as it existed at the time of the Act's amendment.[20]

3. We are confident that, had the legislature desired to altogether bar any recovery by a real estate professional outside the scope of BRRETA, thereby foreclosing actions at common law, it would have made that intention clear in the 2000 amendments. Those amendments, however, express no such intention and it would strain credulity to hold otherwise. Accordingly, we hereby affirm the judgment of the Court of Appeals holding that the absence of a written

---

[16] Additionally, we note that BRRETA provides that "the payment or promise of payment of compensation to a broker . . . shall not determine whether a brokerage relationship has been created," OCGA § 10-6A-11, but that such relationships do exist when created as otherwise described in the Act. OCGA § 10-6A-3 (5).

[17] *Givens v. Ichauway, Inc.*, 268 Ga. 710, 718 (493 SE2d 148) (1997).

[18] Ga. L. 1993, p. 378.

[19] *Lifestyle Family*, 256 Ga. App. at 310; *Perimeter Realty v. GAPI, Inc.*, 243 Ga. App. 584, 597 (533 SE2d 136) (2000).

[20] Similarly, in revising the definition of "agency" within the broker-client context, the 2000 amendments to BRRETA say nothing to foreclose the availability of remedies outside the Act's scope.

agreement between a real estate professional and a client does not preclude the former from seeking to recover compensation under remedies found outside the scope of BRRETA, including those at common law.

*Judgment affirmed. All the Justices concur.*

DECIDED MARCH 28, 2005.

*Chamberlain, Hrdlicka, White, Williams & Martin, Gary S. Freed, William J. Piercy*, for appellants.

*Alston & Bird, T. Michael Tennant, A. McCampbell Gibson, Wade W. Pearson*, for appellee.

*Weissman, Nowack, Curry & Wilco, Seth G. Weissman, Ned Blumenthal*, amici curiae.