### A08A0088. HARROUK et al. v. FIERMAN.
(662 SE2d 892)

BERNES, Judge.

Following a real estate dispute, appellee Martin L. Fierman sued appellants Omar Harrouk and Teresa Hollis d/b/a United

---

[18] OCGA § 24-9-67.1 (b) (2), (3); see *Moran v. Kia Motors America*, 276 Ga. App. 96, 98 (1) (622 SE2d 439) (2005).

[19] See *Moran*, supra.

[20] See *Smith v. Liberty Chrysler-Plymouth-Dodge*, 285 Ga. App. 606, 609 (647 SE2d 315) (2007).

Country/Hollis Realty for damages and other relief. The trial court entered judgment on the jury's verdict in favor of Fierman. Appellants contend in part that the trial court erred in allowing the case to go to the jury. Because we conclude that appellants owed no duty to Fierman and were entitled to judgment as a matter of law, we agree and reverse.

The evidence showed that in 2002, Fierman approached Hollis, a licensed real estate broker and sole proprietor of United Country/Hollis Realty, and expressed an interest in acquiring an office in Sparta, Georgia. Hollis showed Fierman several properties, none of which was suitable for his purposes. Fierman then verbally expressed an interest in a vacant home that was not listed for sale, and requested that Hollis investigate the availability of the property. Hollis identified the home's owner and left him a voicemail message, but the owner never returned Hollis's call and no contact was made.

Throughout early and mid-2003, Fierman periodically followed up with Hollis, who had received no new information about the property. On September 23, 2003, however, the owner of the desired property, Thomas Higgins, came into Hollis's office and expressed his desire to list the property for sale with United Country/Hollis Realty. Higgins indicated that he was anxious to sell the house quickly. Harrouk, who was working as a real estate agent for Hollis's company, was in the office and met Higgins at that time.

Hollis listed the property the same day for $46,500. One or two days later, Hollis contacted Higgins and informed him that Harrouk desired to purchase the house, and they agreed on a sales price of $32,000. Although there is some dispute as to whether Hollis informed Higgins that she had received additional interest in the property, it is undisputed that Hollis never contacted Fierman to inform him that the property had become available to purchase.

In the spring of 2004, Fierman again contacted Hollis to check on the status of the property, at which time Hollis informed him that it had been sold. Fierman then filed suit against appellants, alleging that they conspired to purchase the property in violation of the applicable rules and regulations and "contrary to [their] fiduciary responsibilities" to Fierman. He sought actual damages, which he alleged to be the difference between the listing price of the house and the ultimate sales price, and punitive damages. The jury found in favor of Fierman and awarded him $14,000 actual damages and $500 punitive damages. The trial court entered judgment on the verdict and this appeal followed.

1. Appellants challenge the trial court's denial of their motions for directed verdict and judgment notwithstanding the verdict.[1] The standard of review on appeal "requires [appellants] to show that there was no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, demanded the verdict sought." (Citations and punctuation omitted.) *Grange Mut. Cas. Co. v. DeMoonie*, 227 Ga. App. 812 (3) (490 SE2d 451) (1997). See OCGA § 9-11-50 (a); *South Fulton Med. Center v. Poe*, 224 Ga. App. 107, 108 (1) (480 SE2d 40) (1996) (standards of review for directed verdict and judgment notwithstanding the verdict are the same).

Under Georgia law, the relationship between real estate brokers[2] and potential buyers of real estate is governed by the Brokerage Relationships in Real Estate Transactions Act ("BRRETA"). OCGA § 10-6A-1 et seq. The intent of BRRETA, as declared by the Georgia legislature, is

> to provide codification of the relationships between real estate brokers and consumers of brokerage services in order to prevent detrimental misunderstandings and misinterpretations of such relationships by both consumers and real estate brokers and thus promote and provide stability in the real estate market.

OCGA § 10-6A-2 (a). In this regard, BRRETA provides that, absent a written, signed agreement to the contrary, the duties and obligations imposed upon a real estate broker who performs brokerage services are limited to those set forth in the statute. OCGA § 10-6A-4 (a). More specifically, it provides that

> [a] broker shall not be deemed to have a fiduciary relationship with any party or fiduciary obligations to any party but shall only be responsible for exercising reasonable care in the discharge of its specified duties as provided in this chapter and, in the case of a client, as specified in the brokerage engagement.

Id.

---

[1] Although appellants also claim that the trial court erred in denying their motion for summary judgment, that motion became moot upon the trial court's review of the evidence during the trial of the case. *South Fulton Med. Center v. Poe*, 224 Ga. App. 107, 108 (1) (480 SE2d 40) (1996).

[2] The statute defines a "broker" as "any individual or entity issued a broker's real estate license by the Georgia Real Estate Commission . . . includ[ing] the broker's affiliated licensees. . . ." OCGA § 10-6A-3 (2).

It is undisputed that Fierman never entered into a written agreement with Hollis or her realty company. Thus, the duties and responsibilities that Hollis, and Harrouk as an agent of Hollis's company,[3] owed to Fierman are limited to those set forth in the provisions of BRRETA. OCGA §§ 10-6A-2; 10-6A-4 (a). See *Dasher v. Davis*, 274 Ga. App. 788, 790 (618 SE2d 728) (2005); *Resnick v. Meybohm Realty*, 269 Ga. App. 486, 491 (3) (604 SE2d 536) (2004). OCGA § 10-6A-7 (a), which governs the obligations of a broker to a buyer, requires by its express terms that the broker be "engaged" by the buyer. As defined in the statute, a "brokerage engagement" requires a written contract. OCGA § 10-6A-3 (4). See *Mitchell Realty Group v. Holt*, 266 Ga. App. 217, 218-219 (596 SE2d 625) (2004). Because Fierman did not engage Hollis or her company as defined in BRRETA, appellants did not owe to him the duties owed to a buyer under the statute. Cf. *Gibson v. Rezvanpour*, 268 Ga. App. 377, 378 (1) (601 SE2d 848) (2004). Rather, their duties in this regard extended only to the seller, Higgins, who was not a party to this lawsuit. OCGA § 10-6A-5.

The oral agreement between Hollis and Fierman made Fierman, at most, a "customer"[4] of Hollis and her firm. OCGA § 10-6A-3 (8). Appellants therefore owed Fierman a duty to exercise reasonable care when performing "ministerial acts."[5] OCGA § 10-6A-3. Both Hollis and Fierman testified that Hollis agreed to locate the owner and check on the status of the desired property. She was required to exercise reasonable care when performing those functions, and Fierman does not allege that she was deficient in that regard. The record is entirely devoid, however, of any evidence that Hollis then agreed to keep Fierman informed of the status of the property and/or notify him if the property became available for sale. Without any evidence that Hollis agreed, either verbally or in writing, to perform this function, BRRETA imposes no independent duty upon her to do so. It follows that Fierman's claims cannot survive under BRRETA.

---

[3] Fierman has never articulated the source of any duty that he alleges was owed to him by Harrouk. We will presume that the alleged duty arose from Harrouk's employment as an agent with Hollis's realty company.

[4] A "customer" is defined in the statute as "a person who is not being represented by a real estate broker in an agency capacity pursuant to a brokerage engagement but for whom a broker may perform ministerial acts in a real estate transaction pursuant to either a verbal or written agreement." OCGA § 10-6A-3 (8).

[5] "Ministerial acts" are defined as "those acts described in Code Section 10-6A-14 and such other acts which do not require the exercise of the broker's or the broker's affiliated licensee's professional judgment or skill." OCGA § 10-6A-3. OCGA § 10-6A-14, in turn, describes examples of ministerial acts as identifying property for sale; providing information on property; providing pre-printed real estate form contracts; acting as a scribe in the preparation of real estate form contracts; locating real estate professionals; and identifying points of interest on behalf of any of the parties in a real estate transaction.

Nor do we accept Fierman's assertion that he has a viable common law cause of action for fraud and deceit against appellants. See *Killearn Partners v. Southeast Properties*, 279 Ga. 144, 147 (2) (611 SE2d 26) (2005) (holding that BRRETA does not preclude a real estate professional from seeking to recover compensation using common law remedies for professional services performed without a written contract). Pretermitting the question of whether the holding of *Killearn Partners* could be extended to the facts of this case, Fierman's common law claim fails as a matter of law.

> Fraud and deceit require that the plaintiff prove five essential elements: (1) false representation made by the defendant; (2) scienter, the intent to deceive; (3) intent to induce the plaintiff to act or refrain from acting in reliance upon the representation; (4) justifiable reliance by the plaintiff upon the representation; and (5) damages directly and proximately caused by reliance.

(Citations omitted.) *Middleton v. Troy Young Realty*, 257 Ga. App. 771, 772 (572 SE2d 334) (2002).

Here, the crux of Fierman's claim is that appellants failed to inform him of the fact that the property at issue became available for sale. Although the suppression of certain information can, in some cases, constitute an actionable tort, "there must exist an obligation to disclose before there can be fraud by failure to communicate a material fact." *Middleton*, 257 Ga. App. at 772 (a). "The obligation to communicate may arise from the confidential relations of the parties or from the particular circumstances of the case." OCGA § 23-2-53. See *Middleton*, 257 Ga. App. at 772 (a). As clearly set forth in OCGA § 10-6A-4 (a), no confidential or fiduciary relationship was created between Fierman and appellants as a matter of law. See *Howard v. Barron*, 272 Ga. App. 360, 364 (2) (612 SE2d 569) (2005) (although normally an issue for the jury, the nature of a relationship can be determined as a matter of law when the facts are patent, unambiguous and undisputed). Moreover, as previously mentioned, there is no evidence in the record that Hollis agreed to inform Fierman when the property at issue became available. Fierman has failed to point to any other authority, statutory or otherwise, that would support his assertion that appellants were under a duty to disclose this fact to him, and we can find none under these circumstances. See *Middleton*, 257 Ga. App. at 772-773 (a). See also *Albany Urology Clinic v. Cleveland*, 272 Ga. 296, 299 (2) (528 SE2d 777) (2000); *Justus v. Justus*, 198 Ga. App. 533, 534-535 (2) (402 SE2d 126) (1991). Consequently, Fierman's claim cannot succeed. Appellants were entitled to judgment as a matter of law and the trial court erred in

denying their motions for directed verdict and judgment notwithstanding the verdict.

2. Our holding in Division 1 renders moot appellants' remaining enumerations of error.

*Judgment reversed. Ruffin, P. J., and Andrews, J., concur.*

DECIDED JUNE 5, 2008.

*Joel D. Burns*, for appellants.
Martin L. Fierman, *pro se*.