**SECOND DIVISION**
**MILLER, P. J.,**
**BROWN and GOSS, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**October 17, 2018**

# In the Court of Appeals of Georgia

A18A1295. GEORGIAN FINE PROPERTIES, LLC v. LANG, et al.    GS-047

GOSS, Judge.

Jason and Krista Lang purchased a house renovated and sold by Georgian Fine Properties, LLC ("GFP"). The Langs sued GFP for breach of contract and negligent construction arising from structural defects present in the house.[1] GFP appeals from the jury verdict in favor of the Langs on the negligent construction claim and the trial court's denial of its motions for directed verdict and judgment notwithstanding the verdict ("jnov"). On appeal, GFP argues that the trial court erred in denying its motions because the contract signed by both parties contained an "as is" provision. For the following reasons, we affirm.

---

[1] The trial court granted summary judgment to GFP on the Langs' breach of contract claims. That ruling is not at issue in this appeal.

On appeal from a trial court's ruling on a motion for judgment notwithstanding the verdict, "the standard of review is whether there is any evidence to support the jury's verdict." (Citations and punctuation omitted.) *Avion Sys., Inc. v. Bellomo*, 338 Ga. App. 141, 144 (2) (789 SE2d 374) (2016). To prevail, GFP must show "that there was no conflict in the evidence as to any material issue and that the evidence introduced, with all reasonable deductions therefrom, demanded the verdict sought." (Citation and punctuation omitted.) Id. See also *Harrouk v. Fierman*, 291 Ga. App. 818, 820 (1) (662 SE2d 892) (2008) (standards of review for directed verdict and judgment notwithstanding the verdict are the same).

The facts at trial show that GFP renovates and builds residential houses. In 2011, GFP purchased a single-story home on Cravenridge Drive in Atlanta. GFP then renovated the house by adding a second-story, constructing a garage and remodeling the interior. GFP then marketed the house for sale.

On June 11, 2013, GFP and the Langs entered into a Purchase and Sale Agreement ("Agreement") for the Langs to buy the house. The Agreement presented to GFP was provided by the Langs' real estate agent. The Agreement is the standard home sale form contract provided by the Georgia Association of Realtors.

The Agreement provided that the house was being sold to the Langs subject to a 10-day due diligence period. The due diligence period was to allow the Langs time to inspect the house and determine whether to go forward with the purchase. The Agreement also allowed the Langs to terminate the contract at any time during the due diligence phase. It further provided that if the Langs "ha[ve] concerns with the Property, [they] may during the Due Diligence Period seek to negotiate an amendment to this Agreement to address such concerns."

During the 10-day due diligence period, the Langs hired Cornerstone Inspection Group to inspect the house. On June 18, 2013, Jason Lang accompanied the inspector during the inspection and even crawled into the crawlspace to examine the foundation. Cornerstone then provided the Langs with a Building Inspection Report, which they reviewed. The Building Inspection Report noted that "unevenness was observed in the floor structure, especially as noted along the center wall of the first floor. This condition is fairly common in older structures such as this. . . . There was no evidence of need for immediate repair; however the flooring system should be monitored for further movement." The Langs testified at trial that the Building Inspection Report placed them on notice that the hardwood floors were uneven, that

the house had originally been built in 1953, and that the new construction was built on an existing foundation and flooring system.

After the inspection, GFP and the Langs entered into an Amendment to the Agreement on June 20, 2013. The Amendment identified 16 items which GFP agreed to repair prior to closing, but did not address the hardwood floors or foundation. The Langs did not get a structural analysis of the foundation of the home. After the items identified on the Amendment were addressed, the Langs conducted a final inspection before closing. On July 22, 2013, the Langs and GFP closed on the sale.

In August 2013, the Langs moved into the home. Between three and four months after moving in, the Langs noticed that the hardwood floors began to deflect, the kitchen backsplash began to separate from the countertops, and the window molding began to crack. GFP inspected the property, but did not offer to repair the issues.

Section 9 of the Agreement provides that "[i]n the event Buyer does not terminate this Agreement prior to the end of the Due Diligence period, then. . . Buyer shall have accepted the Property "as is" subject to the terms of this Agreement[.]" The Agreement further contains a Seller's Property Disclosure Statement that instructed the Langs to carefully inspect the house, providing, inter alia: "If an independent

4

evaluation of the Property reveals potential problems or areas of concern that would cause a reasonable buyer to investigate further, Buyer may not have legal recourse if Buyer fails to investigate further."

On July 11, 2014, the Langs filed the instant lawsuit alleging negligent construction and breach of contract. The Langs claimed that GFP was liable because it negligently altered the foundation of the house "such that the foundation did not support portions of the floor located above," thereby causing the floor to buckle, and because it negligently installed hardwood floors throughout the house.

At trial, the Plaintiffs introduced evidence that GFP hired Albert Palmer, an engineer with Palmer Engineering, to produce an engineering report about adding a second story to the home. The report recommended that GFP "stiffen" the existing 2x8 floor system by adding two new double 2x10 beams with additional supports under the house in order to add the second story to the home. Palmer produced additional letters containing load calculations on later dates as well. In constructing the second floor, GFP installed one support beam.

After the lawsuit was filed, the Langs hired Tom Zgraggen of Aries Engineering, Inc. to inspect the home. Zgraggen's report noticed the cracking and rotation of a support pier and that the support beam installed by GFP had rolled and

was "put in an out of plumb situation." Zgraggen testified that a rolled beam cannot carry as much load from the residence above, and that the effect of a rolled beam in the foundation would be "extra deflection in the floor system or structures above." He opined that the structural problems the Langs experienced in the home were caused by defects he observed in the foundation.

At trial, GFP moved for a directed verdict on the Langs' claims for negligent construction and attorney fees both at the close of the Langs' case and in a renewed motion following GFP's presentation of evidence. The trial court denied these motions. At the conclusion of the trial, the jury awarded $10,840.00 to the Langs, with $0 awarded for the Langs's claim for attorney fees. After entry of judgment, GFP filed a motion for jnov, contending that the "as is" language of the Agreement barred the Langs' negligence claims. The trial court denied the motion.

1. On appeal, GFP argues that the Langs' negligence claims were barred because of the "as is" language in the Agreement. The Langs argue that the "as is" clause should not insulate GFP from liability for latent defects. For the following reasons, we find no error.

"'[A]s is' provisions in Georgia only relieve the seller from liability on breach of warranty claims." *Southfund Partners III v. Sears, Roebuck and Co.*, 57 FSupp.2d

1369, 1374 (II) (A) (N. D. Ga. 1999) ("Georgia courts construe 'as is' provisions as agreements between parties that the buyer takes the article in its then present state or condition without any implied warranty as to soundness of condition or suitability for use or purposes intended") (citations and punctuation omitted). See e. g., *Perrett v. Dollard*, 176 Ga. App. 829, 830 (338 SE2d 56) (1985) (upholding the grant of summary judgment to seller on a home buyer's breach of warranty claim because "as is" provision excluded any implied warranties). However, "'[a]s is' provisions do not . . . release a seller from liability on non-warranty claims." *Southfund Partners, III*, 57 FSupp.2d at 1374 (II) (A) (holding that "as is" provision in a real estate sales contract did not defeat strict liability claim under federal CERCLA statute). In *Perrett*, 176 Ga. App. at 831 (2), this Court held that, despite the existence of an 'as is' clause in the real estate sales contract which barred the warranty claims, an issue of material fact precluded summary judgment on the buyers' claims that the house was defectively constructed. See also *Mulkey v. Waggoner*, 177 Ga. App. 165, 166 (338 SE2d 755) (1985) (physical precedent only) (finding that the "as is" clause in the real estate contract had no legal effect to preclude passive concealment involved in the sale of the property).

7

We are not persuaded by GFP's reliance upon *Ben Farmer Realty Co. v. Woodard*, 212 Ga. App. 74 (441 SE2d 421) (1994) for the assertion that the real estate contract's "as is" clause bars any negligence claims by the Langs. In *Ben Farmer*, the plaintiff-buyer purchased a vacant residential property that was in obvious dilapidated condition pursuant to a real estate contract containing an "as is" clause. Id. at 76. Although the buyer inspected the house prior to purchase and understood that major repairs would be required to make the house habitable, she did not inspect the attic and thus, did not discover fire damage that was readily apparent. Id. The buyer sued the seller and the seller's real estate agent for passive concealment for the cost to repair the fire damage. Id. This Court held that a grant of summary judgment to the defendants on the passive concealment claim was warranted under the facts of that case because there was no evidence that the defendants were aware of the fire damage and because the buyer knew she was buying a dilapidated house in its "as is" condition, and thus was "obviously on notice to exercise a heightened degree of diligence in inspecting the house under these circumstances." Id. at 77.

In the instant case, on the other hand, the Langs' claim is for negligent construction and not fraudulent concealment. The Langs had purchased a home from GFP that had been recently renovated and was marketed as ready to move-in. The

8

Langs had a duty to inspect the house, and they did so with the assistance of a commercial inspection company. However, "the issue of whether a purchaser has acted with the requisite due diligence is generally a question for the jury." (Citation omitted.) *Conway v. Romarion*, 252 Ga. App. 528, 533 (3) (557 SE2d 54) (2001) (trial court erred in concluding that plaintiff-buyer failed to exercise due diligence as a matter of law to discover odor and other damaged caused by the seller's cats when the seller took overt steps to conceal the damage).

Generally, "[t]he law imposes upon building contractors and others performing skilled services the obligation to exercise a reasonable degree of care, skill, and ability, which is generally taken and considered to be such a degree of care and skill as, under similar conditions and like surrounding circumstances, is ordinary employed by others of the same profession." (Footnote omitted.) *Fields Bros. Gen. Contractors v. Ruecksties*, 288 Ga. App. 674, 676 (1) (655 SE2d 282) (2007). The question whether the contractor exercised the required degree of skill, like any other question of fact, is to be decided by the jury. *Mauldin v. Sheffer*, 113 Ga. App. 874, 880 (150 SE2d 150) (1966). In the instant case, there was evidence at trial that GFP failed to follow the recommendation of the structural engineer when deciding to install only one support beam. Although GFP provided conflicting evidence at trial that a second

beam was not required, the question whether it was liable for negligent construction under the facts of this case was properly left to the jury. "A directed verdict should [only] be granted if there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, shall demand a particular verdict." (Citation and punctuation omitted.) *Wilson v. Brighton Homes, Inc.*, 204 Ga. App. 677, 679 (2) (420 SE2d 360) (1992). Based upon the above, the trial court correctly denied GFP's motions for a directed verdict and for a jnov. *Avion Systems*, 338 Ga. App. at 144 (2).

*Judgment affirmed. Miller, P.J., and Brown, J., concur*.