A08A1142. JBM INVESTMENTS, LLC v. CALLAHAN
INDUSTRIES, INC.
(667 SE2d 429)

ADAMS, Judge.
JBM Investments, LLC appeals an order granting summary judgment in favor of Callahan Industries, Inc. and denying its own motion in this case involving assignment of a contract to purchase land.

The record shows that on January 31, 2006, JBM entered into an agreement to purchase approximately 160 acres of land in Barrow County from SJC Development, LLC. The price was set at $45,000 per acre, and JBM paid earnest money of $50,000. The purchase

agreement contains a contingency related to an attempt to rezone the property. If the property was not rezoned as specified by May 31, 2006, JBM's earnest money would be refunded. The agreement did not provide, however, that JBM could unilaterally terminate the agreement. The agreement did provide that JBM could assign its interest in the agreement without notice to the seller. Time was of the essence for the agreement, and the closing was scheduled for 31 days after rezoning.

On March 21, 2006, JBM entered into a one-page "Assignment of Purchase and Sales Agreement" with Callahan. The simple agreement, which JBM asserts was drafted by Callahan, recites the existence of the purchase agreement, Callahan's desire to assume all rights and obligations of that agreement, and JBM's willingness to assign its rights to Callahan "under the following terms and consideration[:]"

> For consideration of assignment, Callahan Industries, Inc. agrees to $100,000.00 (refundable) earnest money until property is rezoned by Barrow County (nonrefundable after rezone).

Callahan paid JBM $50,000 upon the execution of the assignment and never paid the remaining $50,000. The parties dispute whether an intermediary acted as an agent for JBM and agreed to accept the lesser amount.

On May 23, a few hours before the county board of commissioners met to consider zoning for the property, Callahan faxed a one-page document to JBM entitled "Notice of Decision to Terminate Agreement." The brief text states:

> In accordance with the terms of the certain Agreement between Buyer(s) and Seller(s) with a Binding Agreement Date of March 21, 2006 for the purchase and sale of real property . . . , the undersigned Buyer(s) do hereby give notice to [JBM] (Sellers) of their decision to exercise their Termination Right and terminate this Agreement.

The notice was signed by Matthew J. Callahan and dated May 16, 2006; it includes a blank signature line for JBM. Shortly thereafter, Callahan sent a second fax to JBM, which attempted to clarify by saying, "we have given our Notice to Terminate as per the contract prior to rezone by Barrow County." Callahan then requested a refund of the $100,000. The county board voted to rezone the property at the meeting later that day. JBM refused to refund any money to Callahan, and Callahan brought this suit.

The trial court granted summary judgment in favor of Callahan and held that it "gave good and timely notice of its termination of the 'Assignment of Purchase and Sales Agreement,' and therefore was entitled to reimbursement of the $50,000.00 paid to Defendant under that Agreement."

1. JBM challenges the trial court's grant of Callahan's motion for summary judgment and its denial of JBM's own motion. Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). We review a grant or denial of summary judgment de novo and construe the evidence in the light most favorable to the nonmovant. *Home Builders Assn. of Savannah v. Chatham County*, 276 Ga. 243, 245 (1) (577 SE2d 564) (2003).

We begin by construing the assignment according to the usual rules:

> "An issue of contract construction is at the outset a question of law for the court." [Cit.] The first step is to look to the four corners of the instrument to determine the intention of the parties from the language employed. [Cits.] In so doing, all the attendant and surrounding circumstances may be proved but not explained. [Cits.]
>
> If the contract language is ambiguous, the court must apply the applicable rules of construction. [Cits.] Even in the case of ambiguous contracts, unless such ambiguity remains after the trial court has applied all rules of construction, there is no jury question. [Cits.] And, normally, only if the ambiguity is not resolved by application of the rules of construction may parol evidence be introduced to explain the agreement, at which point the question of what was intended becomes an issue of fact for the jury. [Cits.]

*Livoti v. Aycock*, 263 Ga. App. 897, 901-902 (2) (590 SE2d 159) (2003).

The assignment at issue is poorly written. But the only relevant question is whether Callahan had a right to a refund prior to rezoning of the property. The assignment provides:

> For consideration of assignment, Callahan Industries, Inc. agrees to $100,000.00 (refundable) earnest money until property is rezoned by Barrow County (nonrefundable after rezone).

We find that the language unambiguously provides that the consid-

eration for the assignment would be refundable until the time that the county rezoned the relevant property; after that, the money would not be refundable. We find no other reasonable construction of the agreement. And the assignment does not dictate any specific procedure for Callahan to follow in order to request or obtain the refund as long as it did so before the property was rezoned.

Callahan's notice of May 23 initially appears to be ambiguous in that it could be interpreted either as an attempt to terminate the assignment or as an affirmation of the assignment and an attempt to terminate the purchase agreement itself. In its notice to JBM, Callahan references an agreement between a "buyer" and "seller," referring to itself as the buyer, and it describes the agreement as one "for the purchase and sale of real property." This suggests that Callahan is referring to the purchase agreement dated January 31, 2006. On the other hand, the notice correctly states the date of the relevant agreement as March 21, 2006, the date of the assignment. And Callahan refers to JBM as the seller, which is inconsistent with the purchase agreement yet consistent with the assignment if we were to read "seller" to mean "assignor" and "purchaser" to mean "assignee." Although Callahan refers to "termination" of the agreement in the notice, asking for and obtaining a refund of the consideration for the assignment is tantamount to terminating the assignment. Also, Callahan sent the notice to JBM, the assignor. Finally, as admitted by JBM, the purchase and sale agreement does not include a provision allowing unilateral termination by the buyer.

Like the trial court, we conclude that Callahan's notice of May 23 was a proper request for a refund of the consideration paid for the assignment and that it was timely. It cannot be seen as an attempt to terminate the purchase agreement given that there was no right to unilaterally terminate under that agreement. Although inartfully drawn, it can only be construed as a request for a refund under the assignment. Also, the assignment does not require JBM's consent to a refund or any other formalities, and therefore the fact that Callahan's notice included a signature line for JBM is immaterial; the signature line was superfluous.

2. JBM argues Callahan was not authorized to terminate the assignment because the assignment was executory and not subject to cancellation absent mutual consent, and because it never paid the full consideration. See OCGA § 13-1-2 (b) ("An executory contract is one in which something remains to be done by one or more parties."). We find the first argument to be without merit. The case law cited in support of this argument provides only that "[o]ne *method* of terminating all rights under an executory contract whether in writing or not, is by mutual agreement. [Cit.]" (Emphasis supplied.) *Long Mfg. Co. v. Citizens Bank*, 120 Ga. App. 321, 324 (170

SE2d 334) (1969). Here, the assignment allowed Callahan a full refund. JBM's second argument is illogical in that if Callahan had paid the full $100,000 it would be entitled to a refund in that amount. Given that Callahan was entitled to a full refund, JBM cannot show any harm from having to refund only the amount already paid. For this same reason, JBM's argument that it was entitled to setoff and recoupment is also without merit.

3. JBM's third enumeration of error is without merit and moot. It contends the trial court should have struck, and that it impermissibly considered, inadmissible parol evidence and hearsay in the form of an affidavit that contained purported evidence that an intermediary agreed on behalf of JBM to a reduced payment of $50,000 for the assignment. First, JBM cannot show that the trial court relied on any impermissible evidence. Second, as shown above, it was not necessary to consider the affidavit in question in order to decide the case.

*Judgment affirmed. Smith, P. J., and Mikell, J., concur.*

DECIDED SEPTEMBER 18, 2008.

*Smith, Gambrell & Russell, Marcia M. Ernst*, for appellant.
*Jay B. Bell*, for appellee.