## A11A1255. LYNX REAL ESTATE, INC. v. F. A. L. INVESTMENTS, LLC.

(718 SE2d 552)

SMITH, Presiding Judge.

In this action on a real estate brokerage contract, Lynx Real Estate, Inc. ("Lynx") appeals from the grant of summary judgment in favor of F. A. L. Investments, Inc. ("F. A. L."), the seller of the property. Because genuine issues of material fact remain for resolution, we reverse.

Lynx brought this action seeking a commission on the sale of a commercial property by F. A. L., alleging that the exclusive brokerage contract between the parties was extended by mutual agreement and that the sale was procured by Lynx during the six-month extension period provided by the terms of the contract. Lynx also alleged, in the alternative, a claim in quantum meruit for the value of its services in procuring the purchaser of the property. F. A. L. moved for summary judgment, asserting that the written contract expired by its terms and was never extended and that Lynx was not the procuring cause of the sale.

On August 6, 2010, the trial court entered a brief order denying F. A. L.'s motion for summary judgment because "material issues of fact remain on claims so alleged." But on October 4, 2010, the trial court entered another brief order granting the motion for summary judgment, noting only: "Since there was no written agreement or actual procurement of a buyer, plaintiff's claims fail." And on

October 27, 2010, the trial court entered a third order reading:

It having come to the Court's attention that two (2) conflicting orders have been filed into the Court's record in error, It is hereby ordered that the order filed with the Court on August 6, 2010 is set aside and the order filed with the Court on October 4, 2010 shall remain granting the defendant's motion for summary judgment for the reasons cited in said order.

This appeal followed.

"On appeal from a grant of a motion for summary judgment, we review the evidence de novo, viewing it in the light most favorable to the nonmovant, to determine whether a genuine issue of fact remains and whether the moving party is entitled to judgment as a matter of law. [Cit.]" *Simprop Acquisition Co. v. L. Simpson &c. Unitrust*, 305 Ga. App. 564 (1) (699 SE2d 860) (2010). So viewed, the record shows that in September 2006, Lynx and F. A. L. executed a written "Representation Agreement." In this agreement, F. A. L. granted to Lynx "the exclusive and irrevocable right and authority to sell" an office building in Fayette County for a period of time ending on March 14, 2007. The parties agreed to a certain commission if Lynx procured a buyer during the term of the agreement "or any extension thereof," or if

[a] sale, exchange or other conveyance of the property is made within six (6) months after the expiration of the term to a person or entity with whom agent has negotiated, or to whose attention agent has brought the property, or who was introduced to seller by agent as a prospective purchaser . . . provided that the name of any such person or entity has been submitted to seller by delivery of a written offer to purchase the property prior to expiration of the term or by written notice within fifteen (15) calendar days of such expiration. With respect to a sale, exchange or other conveyance to any such person or entity, agent shall conclusively be deemed to be the procuring cause.[1]

The agreement also provided: "Any future modification of this agreement will be effective only if it is in writing and signed by the

---

[1] This court has recognized similar post-termination provisions in exclusive listing agreements. See *Snipes v. Marcene P. Powell & Assocs.*, 273 Ga. App. 814 (616 SE2d 152) (2005); *Goodman v. Frolik & Co.*, 233 Ga. App. 376, 377-378 (504 SE2d 223) (1998); *Ellzey Realty Co. v. Hugo, Inc.*, 154 Ga. App. 460, 461-462 (268 SE2d 717) (1980).

party to be charged."

The agreement by its terms expired on March 14, 2007. Lynx, however, contends that the evidence shows the parties continued the written agreement in force after that date. Lynx presented evidence, including e-mails exchanged between the parties, that after March 14, 2007, and throughout the summer and fall of 2007, F. A. L.'s principals continued to discuss the marketing of the property with Lynx. F. A. L.'s representative acknowledged that during this time, Lynx sought out prospective customers, negotiated a contract and obtained earnest money, corresponded with the purchaser on F. A. L.'s behalf, forwarded letters of intent to F. A. L., including one from the purchaser in September 2007, and met with the purchaser and F. A. L. in person in the fall of 2007 to negotiate the terms of a sale.

Lynx's principal testified that as of late 2007, the purchaser was still interested in the property but wanted to sell another property in order to finance the transaction. F. A. L.'s principal acknowledged that F. A. L. had "multiple verbal and written communications" with Lynx between March 2007 and January 2008 "[b]ecause I wanted him to find a buyer for the building, and we were willing to pay him a commission if he did so." He also acknowledged that Lynx "did find" the purchaser and "brought [him] to the table for negotiations in September 2007."

On January 17, 2008, F. A. L.'s principal informed Lynx by e-mail that it was retaining a different broker and instructed Lynx to "direct any inquiries to them." In April 2008, within six months of that e-mail, F. A. L. signed a contract for the sale of the property, for the same purchase price negotiated by Lynx and with the same purchaser presented by Lynx in the fall of 2007.

1. The parties' extended correspondence and activity provide some evidence that the parties agreed to extend the original written contract until F. A. L. terminated it on January 17, 2008. And it provides some evidence that Lynx was a "procuring cause" of the eventual sale. *Perimeter Realty v. GAPI, Inc.*, 243 Ga. App. 584, 596-597 (11) (533 SE2d 136) (2000) (prima facie evidence of procuring cause when brokers brought parties together, presented information to parties, set up meeting between parties, and continued to attempt to monitor negotiations until seller declined their assistance).

F. A. L. contends that it never agreed to an extension and that the terms of such an extension were never established, and it points to evidence contrary to that presented by Lynx. But when the evidence is in conflict, as it is here, whether Lynx and F. A. L. mutually intended to extend the term of the existing contract is a

question for the finder of fact.

> Even if the contract provides it may not be changed except by writing, parties may subsequently by mutual consent enter into a new agreement at variance with the other. The modified agreement need not be expressed in words, in writing or signed, but the parties must manifest their intent to modify the original contract. Whether there has been such a mutual and intended departure so as to make practically a new agreement is generally a question for the fact finder to determine.

(Citations and punctuation omitted). *Marathon Oil Co. v. Hollis*, 167 Ga. App. 48, 49 (1) (B) (305 SE2d 864) (1983).

> Further, in cases such as this one, the circumstances surrounding the making of the contract, such as correspondence and discussions, are relevant in deciding if there was a mutual assent to an agreement. Where such extrinsic evidence exists and is disputed, the question of whether a party has assented to the contract is generally a matter for the jury.

(Citations omitted.) *Turner Broadcasting System v. McDavid*, 303 Ga. App. 593, 597 (1) (693 SE2d 873) (2010). "[T]he question as to what was intended here is an issue of fact that requires jury resolution. [Cit.]" *Atlanta Dev. v. Emerald Capital Investments*, 258 Ga. App. 472, 479 (1) (574 SE2d 585) (2002).

The Georgia Brokerage Relationships in Real Estate Transactions Act ("BRRETA"), OCGA § 10-6A-1 et seq., cited by F. A. L., does not change this result. First, our Supreme Court has concluded

> that the legislature did not intend for BRRETA to regulate real estate commissions or remuneration payments, but rather (as explained) is concerned primarily with the question of whether and under what circumstances a client or a customer relationship arises, and what duties are owed within the context of each.

(Citations and footnote omitted.) *Killearn Partners, Inc. v. Southeast Properties*, 279 Ga. 144, 147 (2) (611 SE2d 26) (2005). Additionally, this is not a case in which "no written brokerage engagement agreement has been executed." Id. at 144. Rather, Lynx contends that an existing written agreement was modified by mutual consent to amend its terms in accordance with black letter Georgia contract

law. Finally, even if no written agreement is found to be in effect, BRRETA has no effect on other common law actions for recovery of a real estate commission, such as the quantum meruit claim also alleged by Lynx. Id. at 147 (2). F. A. L. has not demonstrated that no material issues of fact remain or that it is entitled to judgment as a matter of law. The trial court therefore erred in granting summary judgment in favor of F. A. L.

2. In light of our holding in Division 1 of this opinion, we do not reach Lynx's remaining enumeration of error.

*Judgment reversed. Mikell and Dillard, JJ., concur.*

DECIDED NOVEMBER 1, 2011.

*Cohen, Cooper, Estep & Allen, Jefferson M. Allen*, for appellant.
*Smith, Welch, Webb & White, Timothy W. Haley*, for appellee.