**SECOND DIVISION**
**RICKMAN, P. J.,**
**GOBEIL and DAVIS, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**March 4, 2026**

# In the Court of Appeals of Georgia

A25A1636. BUFORD DAM VENTURES, LLC v. FAITH
       BUSINESSES, INC.
A25A1682. BIG D FOODS, INC. et al. v. FAITH BUSINESSES,
INC.

DAVIS, Judge.

In these companion appeals stemming from a property dispute involving four

companies, Buford Dam Ventures, LLC ("Buford"), Big D Foods, Inc. ("BDF") and

Meeny, LLC ("Meeny") appeal from the trial court's final order granting Faith

Businesses, Inc.'s ("Faith") petition for declaratory judgment, specific performance,

and attorney fees. In Case No. A25A1636, Buford argues that the trial court erred by

(1) finding that the right of first refusal was assigned to Faith in a lease agreement; (2)

determining that Faith's 2012 lease was a renewal lease; (3) determining that the

merger clause in Faith's 2012 lease did not prohibit the subsequent modification of the

lease; (4) finding that the right of first refusal did not violate the rule against perpetuities; (5) finding that the right of first refusal ran with the land; (6) denying its request for a jury trial; and (7) ordering the release of funds from the court registry to Faith. In Case No. A25A1682, BDF and Meeny argue that the trial court erred by (1) denying their motion for involuntary dismissal; (2) granting Faith's petition for specific performance, declaratory judgment and attorneys fees; (3) granting Faith's motion for a bench trial; (4) prohibiting its expert witness from testifying at trial; and (5) excluding an affidavit from evidence. Because we conclude that the trial court erred by denying Buford's, BDF's, and Meeny's request for a jury trial on Faith's claim for declaratory judgment, we vacate the trial court's orders in both cases, and we remand the cases to the trial court for a jury trial on Faith's claim for declaratory judgment.

The relevant factual background and procedural history of these appeals are as follows. Lance Doyal[1] owned Meeny and BDF, and BDF owned convenience stores at three properties, one of which is located on Columbia Drive in Decatur, Georgia (the "property"). In April 1995, BDF leased the property to U & Me Food and Gas,

---

[1] Doyal passed away during the proceedings, so the transcript of his deposition was read into evidence at trial.

Inc. ("U & Me") The lease ("UMFG lease") was to commence in April 1995 and end in August 2013, and it included the following provisions:

> 17. ASSIGNMENT AND SUBLETTING. Tenant shall not assign this lease or allow any part to be assigned by operation of law or otherwise nor shall tenant sublet the premises or any part thereof nor shall [t]enant allow any use of the [p]remises without the [l]andlord's express written consent. Any such assignment or sub-lease shall be subject to such terms and conditions as the [l]andlord may impose. Tenant may assign this lease to any corporation organized by [t]enant and whereby [t]enant is and remains the sole shareholder. Such assignment shall not relieve [t]enant of any responsibility hereunder.
>
> ...
>
> 26. RIGHT OF FIRST REFUSAL. During this term of this [a]greement or any renewals hereof if [l]essee is not in default herein, the [l]essor does hereby grant to [l]essee a right of first refusal to purchase the premises. In the event [l]essor receives a bona fide written offer for purchase from any third party, said offer shall be communicated to [l]essee. Lessee shall have ten (10) days from the date [l]essee receives said offer to agree in writing to [l]essor to match the terms and conditions of said offer or [l]essee's right of first refusal shall be void.

In 1996, Faith purchased U & Me's leasehold interest in the property. According to Raj Shah, Faith's general manager, written documents were executed by Faith, BDF,

and U & Me to assign the UMFG lease and the right of first refusal to Faith, but Shah was unable to produce the documents for trial.[2] In June 2005, BDF conveyed the property to Meeny for an unknown sum of money.[3] Shah testified that he was unaware of the transfer at the time of its execution and that he learned about the transfer in 2020.

In 2012, Doyal contacted Shah about negotiating another lease ("Faith lease") on the property.[4] Shah testified that Doyal told him that, other than an increase in rent and a change in the length of the lease, the terms of the Faith lease would remain the same. The parties subsequently executed the Faith lease, but after signing the lease, Shah noticed that the right of first refusal was not included in the lease. Shah contacted Doyal, and according to Shah, Doyal told him to write on the lease, "ALL

---

[2] One of the owners for U & Me also testified that Doyal was present at the closing and executed documents to assign the UMFG lease to Faith.

[3] The parties were in dispute as to the amount that Doyal paid for the transfer. Doyal testified that he paid $750 for the transfer tax, but when asked whether he paid $75,000 to comply with the lender's regulations, he answered, "I don't remember doing that."

[4] According to Shah, Doyal asked him if he wanted to renew the lease on the property, but Doyal testified that the lease was not a renewal "in the context of the document being renewed" but merely a "renewal of [his] business" with the property.

TERMS STAYS SAME AS ORIGINAL FIRST LEASE." Shah believed that since the first lease expressly mentioned the right of first refusal, and the Faith lease was merely a renewal of the UMFG lease, the additional language adequately included the right of first refusal. Shah made the notations to the lease and, according to him, he faxed a copy of the modified lease to Doyal.[5] Doyal testified, however, that he did not instruct Shah to make the change to the 2012 lease.

In 2020, Doyal contacted Shah and informed him that he was selling the property. Shah confronted Doyal about the right of first refusal, and Doyal informed him that he had already signed a contract with Buford and that Buford was purchasing the property for $1.25 million. Buford's owner subsequently contacted Shah, and Shah told her about the right of first refusal, but she said that she "did not care." Buford purchased the property in December 2020, and in August 2023, Buford sent Faith a letter demanding possession of the property.

Faith filed a complaint against Buford, BDF, and Meeny, seeking specific performance to exercise its right of first refusal under both leases, a temporary restraining order and injunction, declaratory judgment, and asserting claims for breach

---

[5] Doyal testified that neither himself, BDF, or Meeny had fax machines, but he was unsure whether his partner had a fax machine.

of contract and attorney fees under OCGA § 13-6-11.[6] The defendants answered the complaint,[7] and BDF and Meeny filed a motion for summary judgment, which the trial court denied after a hearing. In denying summary judgment, the trial court found that eight material issues of disputed fact remained on Faith's claims:

(1) Whether [UMFG] executed an assignment of the lease in favor of [Faith];

(2) Whether [BDF] agreed to the assignment of the lease from UMFG and Faith;

(3) Whether or not the sale of the subject commercial property between [BDF] and [Meeny] met the standard for invoking the [r]ight of [f]irst [r]efusal as set forth in paragraph 26 of the initial lease agreement between [BDF] and [UMFG];

(4) Whether BDF and Faith's understanding of the right of first refusal provision would encompass labeling Meeny a "third party";

(5) Whether the parties intended a written offer to purchase the property to be a condition precedent to the exercise of the right of first refusal;

---

[6] Faith later withdrew its breach of contract claim.

[7] BDF and Meeny asserted a counterclaim for fraud based on the alterations of the 2012 lease, but they later withdrew the counterclaim.

(6) Whether [Doyal], acting on behalf of [Meeny] agreed to the alterations made by [Faith] to paragraph 12:20 of the new 2012 lease agreement[;]

(7) Whether Faith sent a fax to Meeny of the edited 2012 lease; and

(8) Whether Meeny and Faith reached an agreement to include the right of first refusal in the 2012 lease.

Faith subsequently filed a motion for a temporary restraining order and interlocutory injunction to allow it to remain on the property until the resolution of the lawsuit. The trial court granted the motion and ordered Faith to pay $7,819.99 into the court's registry each month until further order from the court.[8] The defendants each subsequently filed a demand for jury trial, but Faith requested that the trial court hold a bench trial. The trial court granted Faith's request for a bench trial. The trial court first found that the defendants were not entitled to a jury trial on Faith's claim for specific performance because there is no constitutional right to a jury trial in equity cases, and an action for specific performance lies in equity. The trial court also found that the defendants were not entitled to a jury trial on Faith's claim for declaratory

---

[8] The trial court also ordered Faith to pay an additional $7,819.99 per month in rent to Buford until the case was resolved.

judgment because there were no factual disputes between the parties. Additionally, the trial court determined that the defendants were not entitled to a jury trial on Faith's claim for attorney fees and expenses under OCGA § 13-6-11 because the trial court is permitted to decide the issue when it sits as the finder of fact.

The case proceeded to a bench trial, and following the trial, the trial court entered an order granting Faith's petition for declaratory judgment, specific performance, and its request for attorney fees under OCGA § 13-6-11. Pertinently, as to the UMFG lease, the trial court determined that U & Me and Faith executed written documents to assign the lease and the right of first refusal to Faith and that BDF consented to the assignment. The trial court also found that Faith's 2012 lease was a renewal of the UMFG lease and that the parties intended for the right of first refusal to continue into the 2012 lease. Specifically, the trial court relied on Shah's testimony that the parties intended to renew the lease and that there was a mutual mistake in the lease agreement which caused the right of first refusal to not be included in the 2012 lease. The trial court also credited Shah's testimony that Doyal instructed him to write "ALL TERMS STAYS SAME AS ORIGINAL FIRST LEASE" on the Faith lease to reflect the parties' intent for the right of first refusal to

8

be included in the lease. The trial court concluded that Faith was entitled to exercise its right of first refusal based on the sale/transfer of the property from BDF to Meeny and Buford's offer to purchase the property, and it declared the sale of the property to Buford void. The trial court also ordered that Faith be repaid $140,759.82 from the court's registry, which reflected the total amount that Faith paid into the court registry pursuant to the temporary injunction. These appeals followed.

*Case No. A25A1636*

1. First, Buford Dam argues that the trial court erred by proceeding to a bench trial on Faith's claim for declaratory relief because factual disputes existed which required the claim to be resolved by a jury.[9] After a careful consideration of the record and the relevant law, we are constrained to agree.

Jury trials in declaratory judgment actions are governed by OCGA § 9-4-6, which provides in part:

> When a declaration of right or the granting of further relief based thereon involves the determination of issues of fact triable by a jury and jury trial is not waived, the issues shall be submitted to a jury of 12 in the form of interrogatories, with proper instructions by the court[.]

---

[9] We address Buford's claims of error in a different order than what it presented in its appellate brief.

In construing this statute, we have been clear that "Georgia's Declaratory Judgment Act only requires a jury trial if there is an issue of fact that must be submitted to the factfinder." *Ken's Stereo Video Junction, Inc. v. Plotner*, 253 Ga. App. 811, 813(2) (560 SE2d 708) (2002); see also *Torres v. Torres*, 364 Ga. App. 695, 699(1) (875 SE2d 881) (2022) ("[P]arties to a declaratory judgment action are entitled to a jury trial if the petition raises an issue of disputed fact."). It is true that issues concerning the construction and interpretation of contracts are generally matters of law for a court to resolve. *Envision Printing, LLC v. Evans*, 336 Ga. App. 635, 640(3) (786 SE2d 250) (2016). But where a trial court has to look to competing evidence of the parties' intent to construe an agreement in a declaratory judgment action, the parties are entitled to a jury trial. *Torres*, 364 Ga. App. at 699(1).

Here, we conclude that there were disputed issues of fact regarding the parties' intent, particularly regarding the right of first refusal, and thus Buford was entitled to a jury trial on Faith's declaratory judgment claim. We note at the outset that Faith's claim for declaratory relief was based in part on the sale of the property from Meeny to Buford. As noted above, in denying BDF's motion for summary judgment, the trial court identified "material issues of *disputed* fact" that directly affected Buford's claim

to the property, including whether Doyal agreed to the alterations in Faith's 2012 lease and whether that lease included a right of first refusal.[10] Moreover, in granting declaratory relief based on the determination that the parties intended for the right of first refusal to continue in the 2012 lease and that they agreed to the alterations in the 2012 lease, the trial court credited Shah's testimony about a mutual mistake in the right of first refusal being left out of the agreement and his testimony that Doyal instructed him to write "ALL TERMS STAYS SAME AS ORIGINAL FIRST LEASE" on the lease. Critically, the trial court determined that Doyal did not dispute Shah's testimony that he told Shah to write the additional language on the 2012 lease to reflect their intent to include a right of first refusal. But we note that in Doyal's deposition testimony, he *specifically* denied Shah's claim that he told Shah to write the additional language on the lease, and BDF and Meeny's counterclaim for fraud was based on the alterations of the lease. Finally, the parties do not dispute that Buford did

---

[10] Indeed, the trial court ultimately determined that because the parties intended for Faith's 2012 lease to contain a right of first refusal, Buford's offer to purchase the property triggered the right of first refusal and that Faith was therefore entitled to purchase the property, and it declared the sale of the property from Meeny to Buford invalid. Thus, we are unpersuaded by Faith's claim that Buford is not entitled to a jury trial on the basis that Buford is only "indirectly affected" by the resolution of the claims.

not waive its right to a jury trial. Because disputed issues of fact existed regarding Faith's declaratory judgment claim, and Buford did not waive its right to a jury trial, the trial court erred by denying Buford's motion for a jury trial. See *Torres*, 364 Ga. App. at 699(1). Cf. *State Farm Mut. Auto Ins. Co. v. Mabry*, 274 Ga. 498, 501–02(3) (556 SE2d 114) (2001) (trial court did not err by denying party's demand for a jury trial in a declaratory judgment proceeding where the appellant failed to identify any findings of fact by the trial court to which there was a conflict in the evidence).[11] We therefore vacate the trial court's judgment and remand the case for a jury trial on Faith's declaratory judgment claim.[12]

2. Buford further argues that the trial court erred by ordering Faith to be repaid $140,759.82 from the court registry. In light of our conclusion in Division 1, we agree.

---

[11] Faith's reliance on our prior decision in *ALEA London Ltd. v. Woodcock*, 286 Ga. App. 572, 574–78(2) (649 SE2d 740) (2007), is misplaced because that case only involved the construction and interpretation of the terms in an insurance policy.

[12] Although Buford argues that it was entitled to a jury trial on Faith's request for attorney fees and expenses under OCGA § 13-6-11, Buford ultimately acknowledges that the trial court was not required to hold a jury trial on that claim because the trial court sat as a finder of fact. See *Covington Square Assoc., LLC v. Ingles Markets, Inc.*, 287 Ga. 445, 448 (696 SE2d 649) (2010) ("[T]he trial court may grant attorney fees or litigation expenses under OCGA § 13-6-11 where it sits as the trier of fact[.]") (quotation marks omitted).

The decision to order funds to be deposited in or disbursed from the court registry falls under the broad powers conferred on trial courts under OCGA § 15-1-3(4).[13] OCGA § 44-7-54(a) generally requires a tenant to pay rent into the registry of the trial court in cases where the right of possession is at issue. Pertinently, OCGA § 44-7-54(c) states in part that the portion "of the funds which is a matter of controversy in the litigation shall remain in the registry of the court until a determination of the issues by the trial court." Here, as part of the trial court's determination that the transfer of the property from Meeny to Buford was invalid and void, the court ordered that Faith be repaid $140,759.82 from the court's registry, which was the total amount that Faith paid into the court's registry pursuant to the temporary injunction. But because we have vacated the trial court's judgment because of its failure to hold a jury trial, the funds that Faith paid in rent into the court's registry remain in controversy and Faith is therefore not entitled to be reimbursed from the registry at this time. Accord *Dataforensics, LLC v. Boxer Prop. Mgmt.*, 361 Ga. App. 311, 323(2) (864 SE2d 140) (2021) (concluding that the trial court did not abuse

---

[13] OCGA § 15-1-3(4) provides that "[e]very court has the power ... [t]o control, in the furtherance of justice, the conduct of its and all other persons connected with a judicial proceeding before it, in every matter appertaining thereto[.]"

its discretion by ordering the landlord be paid funds from the registry because we affirmed the trial court's grant of summary judgment to the landlord).[14]

*Case No. A25A1682*

3. In this appeal, BDF and Meeny argue, among other things, that the trial court erred by denying their motion for a jury trial on Faith's claim for declaratory judgment.[15] For the reasons stated above in Division 1, we conclude that the trial court erred by denying their motion for a jury trial on Faith's declaratory judgment claim.[16]

---

[14] In light of our holdings in Divisions 1 and 2, it is unnecessary to address Buford's remaining claims of error, which pertain to the merits of the trial court's grant of specific performance and declaratory relief.

[15] We also address BDF's and Meeny's claims of error in a different order than what is presented in its appellate brief.

[16] We reject BDF's and Meeny's claim that the trial court was required to hold a jury trial on Faith's request for attorney fees under OCGA § 13-6-11 simply because it filed a demand for a jury trial. There is nothing in the language of OCGA § 13-6-11 that requires a trial court to hold a jury trial on the issue of attorney fees under OCGA § 13-6-11 simply because a party has filed a demand for a jury trial, and we cannot add requirements to statutes. See *City of Atlanta v. Block, Inc. of Delaware*, 375 Ga. App. 717, 726(2) (917 SE2d 403) (2025) ("[U]nder our system of separation of powers, courts do not have the authority to rewrite statutes. The doctrine of separation of powers is an immutable constitutional principle which must be strictly enforced. Under that doctrine, statutory construction belongs to the courts, legislation to the legislature. We can not add a line to the law.")(citation modified).

In light of this resolution, it is unnecessary to address BDF's and Meeny's remaining claims of error.

In sum, in both cases A25A1636 and A25A1682, we vacate the trial court's orders granting Faith's petition, and we remand the cases to the trial court for a jury trial on Faith's declaratory judgment claim.

*Judgments vacated and cases remanded. Rickman, P. J., concurs. Gobeil, J., concurs specially.*

1

A25A1636. BUFORD DAM VENTURES, LLC v. FAITH
    BUSINESSES INC.

A25A1682. BIG D FOODS, INC. et al. v. FAITH BUSINESSES,
INC.


GOBEIL, Judge, concurring specially.

I agree with the Majority's decision to vacate the trial court's judgment in these cases because there was at least one disputed issue of fact for which the defendants were entitled to a jury trial under OCGA § 9-4-6. I write separately to highlight what I believe are the key pieces of information that lead to this conclusion.

As explained by the Majority's opinion, issues concerning the interpretation and construction of contracts are generally matters of law that do not require jury

determination. Indeed, "the issue of interpretation becomes a jury question only when there appears to be an ambiguity in the contract which cannot be negated by the court's application of the statutory rules of construction." *Goody Products, Inc. v. Dev. Auth. of City of Manchester*, 320 Ga. App. 530, 535(2) (740 SE2d 261) (2013). Here, the trial court went beyond merely interpreting any ambiguity in the disputed lease. Rather, in concluding that the right of first refusal was intended to be included in the faith lease despite not appearing in the document signed by the parties, the court repeatedly refers to the "intent" or "understanding" of the parties at the time they executed the faith lease.

The trial court specifically lays out that it "must determine whether the parties intended for the Right of First Refusal to survive the execution of the Renewed Lease." It goes on to answer that question in the affirmative and find that its absence in the faith lease "was the result of mutual mistake." The court then referenced parol evidence, including testimony from Shah about a phone conversation between him and Doyal after the faith lease was executed, during which they agreed that a mistake had occurred and Shah should edit the lease to reflect that all terms stay the same as the original lease. Typically, once parol evidence is introduced to determine intent in the execution of a contract, "the question of what was intended becomes an issue of

fact for the jury." *JBM Investments, LLC v. Callahan Indus.*, 293 Ga. App. 580, 582(1) (667 SE2d 429) (2008). Additionally, looking to circumstances surrounding the execution of a contract to explain whether the parties were operating under a mutual mistake, or deciding whether the parties agreed to modify a contract, involve fact questions that generally "require[ ] jury resolution." *Lynx Real Estate v. F.A.L Invs.*, 312 Ga. App. 324, 326–27(1) (718 SE2d 552) (2011).

Although the trial court considers the evidence on these issues undisputed (finding that Doyal "testified only that he could not recall what they discussed at or around the time of the execution of the Renewed Lease"), I agree with the Majority that the record reflects that Doyal did contest the idea that he agreed with this alteration to the written document. In addition to denying the allegations in his answer and filing his counterclaim in which he asserted that neither he nor anyone on behalf of either defendant agreed to the alteration, he affirmatively testified in his deposition that "he knew nothing about this amendment," and he had never seen the notation before Faith filed the lawsuit. Thus, I agree that this judgment should be vacated, and the case remanded for a jury trial.